Susan Martin (AZ #014226)
Jennifer Kroll (AZ #019859)
Michael M. Licata (AZ #033941)
MARTIN & BONNETT, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Byzantine Catholic Eparchy of Phoenix,<br><br>                    Plaintiff,<br><br>v.<br><br>Employee Benefit Services, Inc.; Bert Reimann; Janet A. Dicks; Meritain Health, Inc.; ABC Entities 1-20; John and Jane Does 1-20,<br><br>                    Defendants. | Case No.:<br><br>**COMPLAINT** |

This is an action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et. seq.* (ERISA) and the laws of the State of Arizona for a declaration of rights, to recover losses, to remedy breaches of fiduciary duties and prohibited transactions, to recover unauthorized and excessive fees and other payments, to obtain an accounting, to remedy violations of contractual rights, fraud, conversion, misrepresentation and to make whole and protect the rights and interests of the Byzantine

Catholic Eparchy of Phoenix and its employees.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the ERISA claims pursuant to § 502(e) and (f) of ERISA, 29 U.S.C. §1132(e) and (f) and 28 U.S.C. §1331.

2.     This Court has supplemental jurisdiction over the state law claims pursuant to 29 U.S.C. § 1391(b).

3.     Venue is proper pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 because the claims arose, and the breach took place in the District of Arizona, and Defendants do business and may be found in this District.

## PARTIES

4.     Plaintiff Byzantine Catholic Eparchy of Phoenix ("Eparchy of Phoenix") is a nonprofit church incorporated in Arizona and exempt from taxation under Internal Revenue Code § 501(a)(3).

5.     The Eastern Catholic Benefit Plan, ("ECBP") is the unregistered, fictitious name provided by Defendants of an employee welfare benefit plan within the meaning of ERISA §§ 1002(1) and (3) that was established and maintained to provide welfare benefits to participants.

6.     The Eparchy of Phoenix is a co-fiduciary of ECBP under ERISA § 3(21)(A) and common law to the extent it deposited funds and was a named party to a bank account holding funds contributed solely by Plaintiff ("Plan Assets") that were to be utilized exclusively to provide benefits to Plaintiff's employees and beneficiaries under the ECBP.

7.      Defendant Employee Benefit Services, Inc. ("EBS") is for-profit corporation incorporated in Ohio that at relevant times did business in Arizona.

8.      At all relevant times EBS was a "fiduciary" under ERISA § 3(21)(A) and under common law.

9.      At all relevant times, EBS was a "party in interest" under ERISA § 3(14).

10.     Defendant Bert Reimann was at all relevant times, a principal of EBS, a licensed insurance broker and licensed and registered representative in the securities industry who brokered health insurance to employers including to the Eparchy of Phoenix in Arizona.

11.     At all relevant times, Defendant Reimann was a "party in interest" under ERISA § 3(14).

12.     Mr. Reimann is a "fiduciary" under ERISA § 3(21)(A) and under common law.

13.     Defendant Janet A. Dicks is an employee of EBS and a fiduciary under ERISA § 3(21)(A) and under common law.

14.     At all relevant times, Defendant Dicks was a "party in interest" under ERISA § 3(14).

15.     Defendant Meritain Health, Inc. ("Meritain") is a subsidiary of Aetna and is a corporation domiciled in New York and incorporated in Arizona that, *inter alia*, administers ERISA welfare benefit plans.

16.     Meritain at relevant times was a "fiduciary" under ERISA § 3(21)(A) and under common law.

17.     At all relevant times, Defendant Meritain was a "party in interest" under ERISA § 3(14).

18.     ABC Entities 1-20 and John and Jane Does 1-20 are fictitiously-identified Defendants whose true names and legal capacities are presently unknown but who are believed to have committed acts and omissions rendering them liable to Plaintiff for the remedies sought in this action.  Leave of Court is requested to substitute the true names of such Defendants when discovered.

## FACTUAL ALLEGATIONS

19.     Defendant Bert Reimann sold health insurance products to the Eparchy of Phoenix for a number of years prior to 2012.

20.     Mr. Reimann and Defendant Janet Dicks traveled to Phoenix on numerous occasions to meet with employees of the Eparchy of Phoenix with respect to the health and welfare insurance that Mr. Reimann and/or EBS sold to Plaintiff.

21.     Both before and after 2012, Mr. Reimann and Ms. Dicks gave in-person presentations to Plaintiff's employees on the benefits being provided.

22.     At no time prior to 2012 or thereafter did Defendants EBS, Reimann, or Dicks (hereinafter collectively referred to as EBS unless the context dictates otherwise) ever negotiate any agreement regarding how EBS or its employees would be compensated by Plaintiff or demand payment directly for themselves.

23.     Upon information and belief, Defendants EBS and/or Reimann and/or Dicks were paid commissions by insurance carriers for placement of the health and welfare insurance they arranged for the employees of the Eparchy of Phoenix.

24.     Upon information and belief, at relevant times prior to 2012 EBS marketed and sold health insurance products to other Byzantine Catholic Eparchies including, *inter alia*, the Eparchies of Passaic, New Jersey, Pittsburgh, Pennsylvania and Parma, Ohio for the benefit of the employees of those Eparchies.

25.     Upon information and belief, EBS withdrew funds from an account that held money received from the Plaintiff and paid itself with such funds, knowing that there was no agreement between Plaintiff and Defendants authorizing such payments.

26.     Upon information and belief in or about 2012 EBS promoted and persuaded various other Eparchies to change their programs of insurance.

27.     In 2012 EBS promoted and persuaded Plaintiff to participate under the same plan of benefits marketed and sold to various other Eparchies.

28.     Upon information and belief, in 2012 EBS falsely promoted ECBP to Plaintiff as a fully-insured health plan that would provide equivalent benefits at lower costs than the insurance previously in place.

29.     EBS, repeatedly referred to payments that Plaintiff would subsequently make as deposits to the jointly owned account as "premiums."

30.     Plaintiff reasonably believed the benefits being sold by EBS were fully-insured policies and EBS Defendants concealed that they were planning to establish a self-insured health plan.

31.     Instead of brokering a plan of insurance to Plaintiff, Defendants EBS started the ECBP.

32.     On or about May 2, 2012, at EBS' request and direction, the Eparchy of

Phoenix signed an account registration and agreement for a joint checking account with EBS with Mr. Reimann and Ms. Dicks as signers on the account.

33.    There were no corporate or other resolutions authorizing the joint checking account in the name of the Eparchy of Phoenix and EBS and the account was opened under EBS's Taxpayer Identification Number under the name of EBS and the Eparchy of Phoenix.

34.    There was no written agreement between Plaintiff and EBS for the transmission of assets or the establishment of a self-funded health plan.

35.    When EBS established the joint account the Eparchy of Phoenix understood and intended that all of the assets in the account were to be held in trust and used for the sole and exclusive purpose of paying insurance premiums for medical, dental and drug insurance benefits to the approximately 21 employees of the Eparchy of Phoenix who participated in ECBP and their eligible beneficiaries (hereafter "Plan Assets").

36.    The joint account created a fiduciary relationship by and among ECBP, the participants of ECBP, the Eparchy of Phoenix and EBS.

37.    Pursuant to EBS' representations and direction, the Eparchy of Phoenix transmitted funds to be held in trust as Plan Assets in the joint account.

38.    Thereafter, EBS periodically determined and directed the Eparchy of Phoenix to transmit funds to the joint account in the amounts determined, fixed and changed by EBS without consulting with Plaintiff.

39.    The contributions transmitted to the joint account by the Eparchy of Phoenix between 2012 to 2015 totaled over one million dollars.

40.     Defendants never sought or obtained Plaintiff's consent and Plaintiff never consented to allow use of any of the Plan Assets contributed by Plaintiff to the joint account for the payment of claims incurred by employees of any organization other than the Eparchy of Phoenix.

41.     Defendants never sought or obtained Plaintiff's consent and Plaintiff never consented to allow use of any of the Plan Assets contributed by Plaintiff to the joint account for the payment of fees to EBS.

42.     Defendants never sought or obtained Plaintiff's consent and Plaintiff never consented to allow the pooling any of the Plan Assets contributed by Plaintiff to the joint account with the assets of any other employer.

43.     Defendants never sought or obtained Plaintiff's consent and Plaintiff never consented to allow investment of any of the Plan Assets held in the joint account.

44.     Defendants never sought or obtained Plaintiff's consent and Plaintiff never consented to transfer any of the Plan Assets in the joint account offshore to be utilized in a plan or scheme for the provision of captive insurance.

45.     Defendants exercised control of Plan Assets in the joint account and without knowledge or consent of Plaintiff knowingly disposed of Plan Assets, *inter alia*, for:

        a.   payment of claims incurred by employees of organizations other than the Eparchy of Phoenix;

        b.  payment to themselves and others of alleged fees and expenses unilaterally determined by EBS Defendants;

   c.  payment of excessive fees and expenses;

   d.  pooling and co-mingling Plan Assets with the assets of organizations other than the Eparchy of Phoenix; investment of Plan Assets; and

   e.  transfer offshore an alleged investment of Plan Assets out of the joint account purportedly for a plan or scheme for the provision of captive insurance.

46.    In or around 2015, Plaintiff determined that it could no longer afford to continue to pay the rates EBS directed Plaintiff to contribute to the joint account and it would be unable to continue with what Plaintiff understood to be a fully-insured policy for medical, dental and drug benefits secured with the Plan Assets that Plaintiff had been contributing.

47.    Shortly thereafter, EBS unilaterally lowered the monthly premiums it demanded from Plaintiff by approximately 10%.

48.    At no time in or after 2012 did the EBS Defendants disclose to the Eparchy of Phoenix that they used Plan Assets to pay themselves.

49.    Although Plaintiff initially understood from EBS that EBS would be paid through commissions from the insurance products it placed, in fact, EBS paid itself unilaterally, concealing such payments from Plaintiff.

50.    Upon information and belief, EBS contracted with Meritain to serve as a third-party administrator for medical claims.

51.    Upon information and belief, Meritain also received payments from an

account that held money received from Plaintiff.

52.     Meritain processed medical claims and upon information and belief, made discretionary determinations about payment of benefits and the disposition of Plan Assets.

53.     EBS advised Plaintiff that as "the agent," EBS received payment and commissions through Meritain.

54.     Meritain advised Plaintiff that they made no payments nor paid any commissions to EBS and that neither EBS nor its employees were Meritain's agents.

55.     Despite Plaintiff's requests, neither Meritain nor EBS will disclose the identity of ECBP's agents.

56.     Despite Plaintiff's requests, the fees charged by Meritain and paid with Plan Assets have never been disclosed.

57.     Despite Plaintiff's requests, the fees and expenses paid with Plan Assets to EBS and others have never been disclosed.

58.     Upon information and belief, Meritain and/or EBS wrote the only document purporting to be the ECBP plan document in effect from 2012 up through Plaintiff's cessation of active participation in ECBP as of December 31, 2015.

59.     The ECBP plan document stated that it was a Plan and Summary Plan Description effective as of June 1, 2012.

60.     During the period of Plaintiff's active participation in ECBP, ECBP was not a church plan exempt from coverage under ERISA.

61.     ECBP was at all relevant times maintained and controlled by Defendants EBS and Meritain.

62.     EBS is not and never was an organization whose principal purpose was administering or funding of employee benefits for employees of churches or a convention of churches.

63.     EBS is not and never was an organization controlled by or associated with a church or convention of churches.

64.     EBS is not and never was part of or an associate of the Eparchy of Phoenix.

65.     EBS is not and never was listed in the Official Catholic Directory, promulgated by P.J. Kenedy & Sons, which is the official listing of organizations under the purview of the Catholic Church and relied on by the Internal Revenue Service for determining whether a Plan is a "Church Plan."

66.     The purported plan document for the ECBP during the period of Plaintiff's participation claims that the "Plan Sponsor" for the Eastern Catholic Benefit Plan is the Eastern Catholic Benefit Plan.  In short, the ECBP Plan Document states that the ECBP sponsored itself into existence.  This is  not possible as the Eastern Catholic Benefit Plan was not an employer, it had no employees and there is no basis upon which an ERISA plan can sponsor itself into existence.

67.     The purported Plan document for the period of Plaintiff's participation also states that ECBP is the Plan Administrator, another logical impossibility.

68.     The purported Plan document for the period of Plaintiff's participation purports to be a multiple employer plan in so far as it repeatedly refers to "Participating Employers"; however, there is no agreement by and between Plaintiff and any other "Participating Employers."

69.     Upon information and belief, in or around 2017, EBS merged ECBP with the benefit plan for another religious group, the Maronite Diocese for the Eparchy of our Lady of Lebanon, a group with different religious beliefs than the Byzantine Catholic Diocese.

70.     Upon information and belief, the Taxpayer Identification Number used in the ECBP plan document and used for purposes of paying claims, including as a certified elector of the New York Department of Health belongs to the Eparchy of Passaic, New Jersey.

71.     Meritain is a for-profit company and is not an organization maintained or established by a church or controlled by or associated with a church.

72.     Meritain is not and never was an organization whose principal purpose was administering or funding of employee benefits for employees of churches or a convention of churches.

73.     Meritain is not and never was an organization controlled by or associated with a church or convention of churches.

74.     Meritain is not and never was part of or an associate of the Eparchy of Phoenix.

75.      Meritain is not and never was listed in the Official Catholic Directory, promulgated by P.J. Kenedy & Sons, which is the official listing of organizations under the purview of the Catholic Church and relied on by the Internal Revenue Service for determining whether a Plan is a church plan.

76.     On or about November 20, 2015, the Eparchy of Phoenix requested documents and information regarding ECBP including, without limitation, copies of the

signed adoption agreement by the Eparchy of Phoenix and other participating groups.

77.     By letter dated December 8, 2015, EBS responded through Mr. Reimann that there was no adoption agreement for ECBP signed by the Eparchy of Phoenix.

78.     Mr. Reimann's letter dated December 8, 2015 advised that in addition to the Eparchy of Phoenix there were three participating groups in ECBP and that the plan allegedly constituted one group.

79.     Mr. Reimann also stated that there had been no audit with respect to ECBP or with respect to the assets paid by or on behalf of the Eparchy of Phoenix.

80.     Ms. Dicks advised the Eparchy of Phoenix that claims are paid by Meritain on a weekly basis and that EBS is the Plan Administrator.

81.     Mr. Reimann advised the Eparchy of Phoenix that there is no segregation of assets contributed by the various Eparchies.

82.     The Defendants have never advised or accounted to Plaintiff with respect to the disposition of its assets and/or purpose of the disposition of its assets.

83.     Despite requests to Defendants, Defendants have not disclosed the amounts allocated to claims, the amount of assets remaining in the account, and have provided no detailed accounting of the Eparchy of Phoenix's and Plan's assets or liabilities.

84.     Upon information and belief, rather than being used for the exclusive benefit of the employees of the Eparchy of Phoenix and their eligible beneficiaries, Plan Assets transmitted to the joint account by the Eparchy of Phoenix have been used for the benefit of and have unjustly enriched Mr. Reimann, Ms. Dicks, EBS and Meritain and other parties including, upon information and belief, Roundstone and other Eparchies.

85.     Upon information and belief, EBS, Mr. Reimann and Ms. Dicks were paying themselves directly or indirectly without permission or agreement by Plaintiff and without an agency relationship between EBS and Meritain.

86.     On or about December 8, 2015, Mr. Reimann advised the Eparchy of Phoenix that the Eparchy of Phoenix owned approximately 17.54% of the ECBP plan surplus if they terminated their participation in ECBP, stating:

> If a group terminates, their share of any excess/surplus would be the percentage of its premium contribution of the overall premium at time of termination less runout, fees and stop loss premium attributable to the group. As of November 30, 2015, the Eparchy of Phoenix is 17.54% of overall premium.

87.     The Eparchy of Phoenix ended its active participation in ECBP as of December 31, 2015.

88.     Upon information and belief, there was a significant surplus of Eparchy of Phoenix assets existing on the date it ceased its active participation in ECBP including, *inter alia*, the excess of the Plan Assets transmitted by the Eparchy of Phoenix to the joint bank account it held with EBS over the amounts paid for the claims and medical expenses of the Eparchy of Phoenix Plan participants.

89.     In or around December 2015, in response to a request for the participation agreement between the Eparchy and other contributing employers and ECBP, EBS through Defendant Dicks sent Plaintiff a "Participation Agreement" between Roundstone Insurance Ltd. ("Roundstone") a company that maintains a business in Bermuda.

90.     The Roundstone agreement was signed December 7, 2015 and lists EBS's mailing address and email address as the participant contact information and purports to

establish a segregated account in Bermuda as a captive insurance program with Plan Assets.

91.     Plaintiff immediately advised both EBS and Meritain that the transfer of its Plan Assets to an off-shore account in Bermuda pursuant to the Roundstone agreement was unauthorized.

92.     Despite Plaintiff's notification that it did not agree and did not authorize funds to be sent to Bermuda pursuant to the Roundstone agreement, Defendants transferred Plaintiff's assets to Bermuda.

93.     Upon information and belief, Meritain was in possession of the Eparchy of Phoenix's assets in ECBP and transferred them to an account in the Bermuda to be held under a different Taxpayer Identification Number.

94.     The Roundstone Participation Agreement charges excessive and unreasonable fees including the following:

a. Investment Management Fee of .5% of Assumed Premium;
b. Facility Fee of 1.0% of Assumed Premium;
c. Captive Management fee of 2.5% of Assumed Premium
d. Audit, Actuarial, Legal, Bank Charges, LOC Fees of 1.0% of Assumed Premium
e. During any Run-off Periods, Roundstone may charge 5% of Investable assets.

95.     In addition to the other breaches and violations set forth herein, the transfer of assets to Bermuda was highly imprudent, prohibited under ERISA and involves serious conflicts of interest.

96.     Although the Eparchy of Phoenix terminated its participation in ECBP as of December 31, 2015 and requested an accounting and distribution of the surplus assets in

14

the ECBP Plan, the Eparchy of Phoenix has never received its surplus assets from ECBP nor an accounting.

97.    Upon information and belief, as a result of Defendants' use of assets and Defendants' conduct, the Eparchy of Phoenix has suffered significant losses.

98.    Defendants actively concealed their activities from Plaintiff.

99.    Despite several requests for documents and information, including the agreements by and among Meritain, EBS, Mr. Reimann and Ms. Dicks and the Eparchy of Phoenix or any other participating group in ECBP, Defendants have failed and refused to provide such information to the Eparchy of Phoenix or its participants.

100.   Defendants EBS, Reimann and Dicks dealt with and used the Plan Assets in their own interest and for their own benefit without any agreement by Plaintiff to do so.

101.   Defendant Meritain dealt with and used the Plan Assets in its own interest and for Meritain's own benefit without an agreement by Plaintiff to do so.

102.   Defendants transferred and disposed of Plan Assets in a foreign exchange transaction by placing fund assets in the Bermuda Roundstone account on terms less favorable than the terms that would have been available in comparable transactions between unrelated parties.

103.   Upon discovering that ECBP was a self-funded plan and not an insurance product as EBS had consistently represented, Plaintiff requested that Defendants provide proof of compliance with the regulatory and legal requirements of ECBP under, *inter alia*, ERISA, the Patient Protection and Affordable Care Act ("PPACA"), the Internal Revenue Code and applicable regulations, with proof of required filings with the government

including, *inter alia,* ECBP annual reports, audits of Plan claims, documents required for the transitional reinsurance fee and Patient-Centered Outcomes Research Institute (PCORI) fee.

104.    To date, Defendants have not disclosed whether and when they complied with the regulatory and legal requirements governing ECBP and have refused to provide evidence of any such compliance.

105.    Plaintiff ceased active participation in ECBP in December 2015, yet Defendants have failed to provide Plaintiff with any of the surplus assets EBS admitted were due Plaintiff nor any accounting.

**COUNT I**
**TO REDRESS DEFENDANTS' VIOLATIONS OF ERISA'S FIDUCIARY DUTY REQUIREMENTS**

106.    Plaintiff repeats and realleges each allegation set forth in the previous paragraphs as though fully set forth herein.

107.    ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), provides in relevant part:

> (1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
> (A)    for the exclusive purpose of:
>     (i) providing benefits to participants and their beneficiaries; and
>     (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> ***
> (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

16

108.    Section 409 of ERISA, 29 U.S.C. § 1109 provides in relevant part:

**(a)** Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

109.    Section 502(a)(2) of ERISA, 29 U.S.C. §1132(a)(2) provides that a civil action may be brought: "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."

110.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) further provides that a participant, beneficiary, or fiduciary (A) may bring an action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

111.    ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach of co-fiduciary" imposes liability on a co-fiduciary for breaches by another fiduciary under the following circumstances:

**(1)** if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
**(2)** if, by his failure to comply with [ERISA 404(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
**(3)** if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

112.    By the acts and omissions set forth above, including *inter alia*,   by concealing and misrepresenting and failing to notify Plaintiff and participants of the nature of ECBP and provide governing plan documents and instruments that comply with ERISA and that comply with other federal laws including the PPACA and by failing to engage in appropriate oversight and to take appropriate steps to ensure that the Plan Assets are safeguarded for the benefit of the participants and beneficiaries and by ECBP's use of Plan Assets in their own interest and on their own behalf through the payment of unauthorized and excessive fees and expenses to themselves and others, by engaging in foreign transactions with Plan Assets on unfavorable terms, by failing to use assets for the exclusive benefit of participants and beneficiaries Defendants and each of them breached their fiduciary duties under ERISA.

113.    By the acts and omissions set forth above, Defendants knowingly participated or knowingly concealed material information and breaches of fiduciary duty, failed to comply with ERISA § 404 in the administration of his, her or its specific responsibilities which give rise to their status as fiduciaries, enabling the other Defendant fiduciaries to commit fiduciary breaches and/or had knowledge of breaches of fiduciary duty by the other fiduciaries and took no reasonable steps to remedy those breaches.

114.    As a proximate result of Defendants' violation of their fiduciary responsibilities and requirements under ERISA, Plaintiff has been harmed and, *inter alia*, has been deprived of Plan Assets that should have been used for the exclusive purpose of providing benefits to its employees, leaves Plaintiff and its participants have no means of ensuring the co-fiduciaries complied with their obligations with respect to ECBP, including

payment of required taxes, fees and claims and in accordance with ERISA, the PPACA and other applicable laws and Defendants have been unjustly enriched.

115.   Pursuant to ERISA § 502(a)(2) and (a)(3), as a result of Defendants' breaches of fiduciary duty and co-fiduciary breaches for which Defendants are liable, Plaintiff is entitled to declaratory, injunctive and other equitable and make whole relief, including but not limited to, an order declaring that Defendants breached their fiduciary duties in violation of ERISA § 404 and applicable regulations and are also liable for breaches by their co-fiduciaries, an order requiring Defendants to restore Plan Assets and make Plaintiff whole, an order requiring Defendants to disgorge the value of the amounts paid to them together with all profits attributable thereto, an order requiring Defendants to submit to an accounting, an order surcharging Defendants and granting Plaintiff the surplus assets, and such other and further relief as to the Court deems just and proper, together with pre-judgment interest, post-judgment interest, attorneys' fees and costs.

## COUNT II
### TO REDRESS DEFENDANTS' VIOLATIONS OF ERISA'S PROHIBITED TRANSACTION PROHIBITIONS

116.   Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if fully set forth herein.

117.   ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary from engaging in a transaction if the fiduciary knows, or should know, that such transaction constitutes a direct or indirect:

A) sale or exchange, or leasing, of any property between the plan and a party in interest;
(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest; or
(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan.

118.    ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2) prohibits fiduciaries from:

(1) deal[ing] with the assets of the plan in his own interest or for his own account,
(2) in his individual or in any other capacity acting in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
(3) receiving any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

119.    By the acts and omissions set forth above, Defendants violated ERISA and breached their fiduciary duties by engaging in prohibited transactions and by acting on both sides of a transaction in benefitting and paying themselves with Plan Assets and by engaging in foreign transactions with Plan Assets on unfavorable terms,  Plaintiff has been harmed.

120.    Pursuant to Pursuant to ERISA § 502(a)(2) and (a)(3), as a result of Defendants' violations of ERISA's prohibitions, Plaintiff has been harmed and is entitled to declaratory, injunctive and other equitable and make whole relief, including but not limited to, an order declaring that Defendants breached their fiduciary duties and violated ERISA §§ 404, 406, 409 and applicable regulations, an order: 1) requiring Defendants to make Plaintiff  whole; 2) an order requiring Defendants to disgorge the value of the amounts paid to them together with all profits attributable thereto; 3) an order requiring Defendants to submit to an accounting; 4) an order surcharging the fiduciaries of ECBP and granting Plaintiff the surplus assets; and 5) granting such other and further relief as to

the Court deems just and proper, together with pre-judgment interest, post-judgment interest, attorneys' fees and costs.

### COUNT III
### COMMON LAW BREACH OF FIDUCIARY DUTY
### (In the Alternative)

121.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth fully herein.

122.    By the foregoing acts and omissions, Defendants breached their fiduciary obligations to Plaintiff.

123.    Defendants' breach of fiduciary duty was outrageous, malicious, and done with an evil mind.

124.    As a direct and proximate result of Defendants' breaches of their fiduciary obligations, Plaintiff has been harmed and is entitled to general, consequential, incidental and special damages in an amount to be determined according to proof at time of trial, an accounting, restitution, disgorgement, and/or a constructive trust upon the assets held by Defendants, an injunction enjoining Defendants from violating their fiduciary obligations, punitive damages, attorneys' fees and costs, and such other equitable and legal relief as the Court deems just and proper.

///

### COUNT IV
### CONVERSION

125.    Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth fully herein.

126.   By the actions and omissions set forth herein, Defendants exercised improper control and/or dominance over Plaintiff 's assets entrusted to Defendants in denial of Plaintiff 's rights to direct and control their assets.

127.   In converting Plaintiff 's property, Defendants were consciously aware that they had no right to the property and acted in deliberate manner to exercise dominion or control over the property in contravention to the rights of Plaintiff and with an evil mind when it acted as set forth herein.

128.   As a direct and proximate result of Defendants' conversion, Plaintiff has been harmed and is entitled to general, consequential, incidental and special damages in an amount to be determined according to proof at time of trial, an accounting, restitution, disgorgement, and/or a constructive trust upon the assets held by Defendants, an injunction enjoining Defendants' conversion, punitive damages, attorneys' fees and costs, and such other equitable and legal relief as the Court deems just and proper.

**COUNT V**
**BREACH OF CONTRACT**

Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth fully herein.

129.   Plaintiff and Defendant EBS had a contract to provide health and welfare benefits for the sole and exclusive benefit of Plaintiff's employees and beneficiaries.

130.   Plaintiff performed all duties under the contract.

131.   Defendants breached the agreement, *inter alia*, by failing to provide health and welfare benefits for the benefit of Plaintiff's employees and paying themselves and others and paying excessive fees and expenses to the detriment of Plaintiff.  Plaintiff has

paid more for health and welfare benefits in amounts in excess of those agreed upon and has not received surplus assets attributable to its contributions.

132.    As a direct and proximate result Defendants' breach of contract, Plaintiff has been harmed is entitled to general, consequential, incidental and special damages in an amount to be determined according to proof at time of trial, together with interest, attorneys' fees and costs in accordance with Ariz. Rev. Stat. §§ 44-1201 and 12-341.01 and other applicable law, and such other equitable and legal relief as the Court deems just and proper.

**COUNT VI**
**UNJUST ENRICHMENT**

Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth fully herein.

133.    Plaintiff alleges this claim in an alternative in the event it is without a remedy at law.

134.    As a result of the conduct described above, Defendants have been unjustly enriched at the expense of and to the detriment of Plaintiff.

135.    Defendants' conduct was outrageous, malicious, and done with an evil mind.

136.    As a direct and proximate result of Defendants' conduct, Plaintiff has been harmed and is entitled to restitution and disgorgement in an amount to be determined according to proof at time of trial, an accounting, and/or a constructive trust upon the assets held by Defendants, an injunction enjoining Defendants' unlawful conduct, punitive damages, attorneys' fees and costs, and such other equitable and legal relief as the Court deems just and proper.

**COUNT VII**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth fully herein.

137.    There is implied in every contract a covenant of good faith and fair dealing that the parties will deal fairly and honestly with each other and use their best efforts in carrying out the terms of a contract.

138.    As set forth herein, Defendant entered into a contract with Plaintiff promising to provide Plaintiff with health and welfare benefits for the sole and exclusive benefit of Plaintiff's employees and their eligible beneficiaries. Defendants unjustifiably refused to honor their obligations and acted improperly in depriving Plaintiff of the benefits of the agreement by, *inter alia*, unilaterally paying itself and others fees and excess amounts, by refusing to provide an accounting and appropriate oversight and by failing to return the surplus assets to Plaintiff.

139.    In breaching the implied covenant of good faith and fair dealing, Defendants acted with an evil mind and acted in deliberate contravention to the rights of Plaintiff, which is shown above and included, *inter alia*, Defendants' concealment and failure to disclose material information, misrepresentations to Plaintiff concerning ECBP, co-mingling Plan Assets with monies from organizations other than the Eparchy of Phoenix and utilizing Plan Assets for the benefit of persons who are not employees of Plaintiff, appropriating to itself fees and expenses without the knowledge or consent of Plaintiff, paying excessive and unreasonable fees and expenses, disposing of Plan Assets unreasonably and engaging in and permitting others to engage in conflicts of interest .

140.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has been harmed and is entitled to general, consequential, incidental and special damages in an amount to be determined according to proof at time of trial, together with interest, punitive damages, attorneys' fees and costs in accordance with Ariz. Rev. Stat. §§ 44-1201 and 12-341.01 and other applicable law, and such other equitable and legal relief as the Court deems just and proper.

### COUNT VIII
### NEGLIGENT AND/OR INTENTIONAL MISREPRESENTATION

Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth fully herein.

141.    Defendants represented to Plaintiff that they were obtaining insurance products and directed Plaintiff to send premium payments to a joint account that would be used to secure such insurance and pursuant to which Defendant EBS would be compensated through commissions paid by the insurance carrier and withheld material information from Plaintiff failing to disclose, *inter alia*, that they started a self-insured Plan, utilized Plaintiff's assets for the benefit of other employers and the employees of organizations other than the Eparchy of Phoenix,  paid themselves and others unauthorized, unreasonable and excessive amounts, refused to return Plaintiff's surplus, sent Plaintiff's assets to an offshore account and failed and refused to provide material documents and information requested by Plaintiff.

142.    When Plaintiff requested a copy of the ECBP plan document, Defendants provided a document that they backdated and that had first been drafted after Plaintiff ceased active participation in ECBP.

143.    Defendant knew the representations were false or misleading and that they were withholding material information and/or failed to exercise reasonable care in communicating or failing to communicate material information to Plaintiff.

144.    Defendants intended that its representations would be relied upon, or knew the representations would reasonably relied upon.

145.    Plaintiff reasonably relied Defendants' representations and omissions in agreeing to open and pay funds into a joint account as directed by Defendant EBS.

146.    As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff has been harmed and is entitled to general, consequential, incidental and special damages in an amount to be determined according to proof at time of trial, an accounting, restitution, disgorgement, and/or a constructive trust upon the assets held by Defendants, punitive damages, attorneys' fees and costs, and such other equitable and legal relief as the Court deems just and proper.

**COUNT IX**
**CONSTRUCTIVE FRAUD**

Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth fully herein.

147.    As set forth above, all Defendants owed fiduciary duties to Plaintiff.

148.    In breach of Defendants' fiduciary duties, Defendants misrepresented and failed to disclose material facts.

149.    Plaintiff justifiably relied on Defendants' misstatements and omissions, which were substantial factors in causing harm to Plaintiff including loss of assets.

150.     As a direct and proximate result of Defendants' constructive fraud, Plaintiff has been harmed and is entitled to general, consequential, incidental and special damages in an amount to be determined according to proof at time of trial, an accounting, restitution, disgorgement, and/or a constructive trust upon the assets held by Defendants, punitive damages, attorneys' fees and costs, and such other equitable and legal relief as the Court deems just and proper.

## COUNT X
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth fully herein.

151.     In the event that any of the Defendants did not owe Plaintiff a fiduciary duty, said Defendant is nevertheless liable to Plaintiff for aiding and abetting.

152.     Defendants each knowingly participated in the breaches of fiduciary duties alleged herein.

153.     The breaches of fiduciary duties alleged herein caused injury to Plaintiff.

154.     Defendants each knew the conduct alleged herein constituted breaches of fiduciary duties.

155.     Defendants each substantially assisted and encouraged the breaches of fiduciary duties alleged herein.

156.     As a direct and proximate result of Defendants' aiding and abetting breach of fiduciary duties, Plaintiff has been harmed and is entitled to general, consequential, incidental and special damages in an amount to be determined according to proof at time of trial, an accounting, restitution, disgorgement, and/or a constructive trust upon the assets

held by Defendants, punitive damages, attorneys' fees and costs, and such other equitable and legal relief as the Court deems just and proper.

## COUNT XI
## AIDING AND ABETTING FRAUD

Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as if set forth fully herein.

157.    In the event that any of the Defendants did not commit fraud, said Defendant is nonetheless liable for aiding and abetting.

158.    Defendants each knowingly participated in the fraud alleged herein.

159.    The fraud alleged herein caused injury to Plaintiff.

160.    Defendants each knew or had reason to know that Plaintiff would rely on the misrepresentations and omissions alleged herein.

161.    Defendants each substantially assisted and encouraged the fraud alleged herein.

162.    As a direct and proximate result of Defendants' aiding and abetting fraud, Plaintiff has been harmed and is entitled to general, consequential, incidental and special damages in an amount to be determined according to proof at time of trial, an accounting, restitution, disgorgement, and/or a constructive trust upon the assets held by Defendants, punitive damages, attorneys' fees and costs, and such other equitable and legal relief as the Court deems just and proper.

## COUNT XII
## AIDING AND ABETTING CONVERSION

163.    In the event that any of the Defendants did not commit conversion, said Defendant is nonetheless liable for aiding and abetting.

164.    Defendants each knowingly participated in the conversion alleged herein.

165.    The conversion alleged herein caused injury to Plaintiff.

166.    Defendants each substantially and knowingly assisted and encouraged the conversion alleged herein.

167.    As a direct and proximate result of Defendants' aiding and abetting conversion, Plaintiff has been harmed and is entitled to general, consequential, incidental and special damages in an amount to be determined according to proof at time of trial, an accounting, restitution, disgorgement, and/or a constructive trust upon the assets held by Defendants, punitive damages, attorneys' fees and costs, and such other equitable and legal relief as the Court deems just and proper.

WHEREFORE, Plaintiff demands judgment against Defendants:

A.  Declaring that Defendants violated ERISA §§ 404, 406 and relevant regulations;

B.  Declaring that Defendants breached their contractual obligations, breached their fiduciary obligations, engaged in prohibited transactions, breached the implied covenant of good faith and fair dealing; engaged in negligent and/or intentional misrepresentation; engaged in fraud and/or constructive fraud; were unjustly enriched; committed conversion and committed theft and aided and abetted the foregoing;

C.  Directing an accounting from Defendants of all assets of ECBP and all assets received from Plaintiff;

D. Declaring that Plaintiff is entitled to declaratory, equitable and other appropriate relief as a result of Defendants' violations of ERISA and/or the common law, including, without limitation, a declaration and order: granting restitution to Plaintiff; imposing a constructive and resulting trust on assets received by Defendants and all profits attributable thereto and disgorging all such assets and profits; surcharging Defendants and each of them  for all losses to Plaintiff and ECBP;

E. Awarding damages to Plaintiff in the amount of all assets contributed to fund ECBP and the surplus Plan Assets;

F. Awarding Plaintiff Eparchy of Phoenix punitive damages;

G. Awarding prejudgment interest to Plaintiff in accordance with ERISA, Ariz. Rev. Stat. § 44-1201 and/or other applicable law;

H. Awarding Plaintiff its attorneys' fees under ERISA § 502(g) and/or A.R.S. §12-341.01 and/or the common law.


Dated this 26th day of April, 2018.

                                        **MARTIN & BONNETT, P.L.L.C.**

                                        By: s/Susan Martin
                                        Susan Martin
                                        Jennifer Kroll
                                        Michael M. Licata
                                        4647 N. 32nd St., Suite 185
                                        Phoenix, Arizona 85018
                                        Telephone: (602) 240-6900

                                        *Attorneys for Plaintiff*